RECEIVED

AUG 0 2 2022

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NORTH CAROLINA**

Western

**RALEIGH DIVISION**

|  |  |
|---|---|
| | ) |
| **NOEL VINCENT THOMAS** | ) |
| **PRO SE LITIGANT** | ) |
| **PLAINTIFF** | ) |
| **Vs.** | ) |
| **NORTH CAROLINA MUTUAL LIFE** | ) CASE NO. 5:22-CV-00291-M |
| **INSURANCE COMPANY (NCMLIC),** | ) **JURY TRIAL DEMANDED** |
| **MICHAEL L. LAWRENCE, NCMLIC, CEO** | ) |
| **ALABAMA DEPARTMENT OF** | ) |
| **INSURANCE, (ALDOI),** | ) |
| **JAMES FINN, ALDOI, CID,** | ) |
| **NORTH CAROLINA DEPARTMENT** | ) |
| **OF INSURANCE (NCDOI),** | ) |
| **JOHN HOOMANI, NCDOI, GC,** | ) |
| **DEFENDANTS.** | ) |

## COMPLAINT WITH DEMAND FOR JURY TRIAL

1) Plaintiff, Noel Vincent Thomas, bring this action for the violations of state and federal laws against Defendants North Carolina Mutual Life Insurance company and its officials and Alabama and North Carolina Department of Insurance, its division and officials for fraud, conspiracy, negligence, and failure to provide due process and policy privacy issues.

## JURIDICTION AND VENUE

2) This action is for claims of fraud, conspiracy, negligence, violations of privacy, equal protection, and due process clauses of the fourteenth amendment of the U.S. Constitution pursuant to 42 U.S.C. 21 section 1983, 42 U.S.C. 21 section 1985, 18 U.S.C. 13 section 241, 18 U.S.C. 47 sections 1030, 1037 and 1038, 18 U.S.C. 63 sections 1341 and 1349 and various, Alabama and North Carolina state laws.

3) Under the Constitution and laws of the United States, Alabama and North Carolina state laws does this action arise. This court has jurisdiction pursuant to 28 U.S.C. sections 1331, 1332, 1343 and 1367.

4) This venue is proper in the Raleigh division of the United States District Court for the Eastern District of North Carolina because the alleged acts occurred within these boundaries and even though Plaintiff resides in Tampa, Florida, the business, and transactions are native to this jurisdiction.

1

## PARTIES INVOLVED

1) Plaintiff resides in Tampa, Florida and is an U.S. veteran that occasionally work through temporary agencies and live in HUD-VASH housing.

2) Defendant North Carolina Mutual life insurance is a business that provided insurance coverage to the public and private sector.

3) Defendant Michael L Lawrence is the Chief Executive Officer of North Carolina Mutual Life Insurance Company.

4) Defendants Alabama and North Carolina Department of Insurance are state government agencies that regulate policies and protect customers in the insurance market.

5) Defendant James Finn is a criminal investigative officer for Alabama Department of insurance.

6) Defendant John Hoomani is the General Counsel for North Carolina Department of Insurance

## STATEMENT OF FACTS

In February of 2018, Plaintiff's sister passed away and upon going through her legal documentation a letter from North Carolina Mutual Life Insurance Company was discovered dated January 4, 2018, and it indicated a loan payment, the current loan balance, and accruing interest that was due on policy number 0184560N, which belonged to Willie A. sullen "previous policy owner" *(See E-1).* In that letter the Defendants stated that the death benefits would be

**2**

reduced by the amount of the loan balance and that they encouraged the policy owner to pay the loan balance in full, in order that the beneficiary may receive the complete payment upon death, and this very act alone, by NCMLIC, is fraud, extortion and embezzlement, due to the fact that the Defendants have failed to produce or provide documented proof to Plaintiff, his family or the courts, that the loan currently or in past times ever existed. Also, that letter and all other loan payment statements were sent to Plaintiff's family members, and not to the previous policy owner who was incarcerated at that time and the Defendants know that to be true because they sent him a letter while in prison, dated July 2, 2018, which instructed the previous policy owner to send them a notarized document with all his requests for information and documentation, *(See E-2),* and the date of that particular document and the above-mentioned January 4, 2018, letter confirms that the previous policy owner had no knowledge or involvement in the fictitious loan scheme. Due to the previous policy owner being incarcerated at the time of the discovery of the above-stated January 4, 2018, document Plaintiff immediately sent him a letter inquiring information on whether he knew anything about the loan issue and he responded by writing a letter stating he never gave permission to anyone to access his policy information. Once that fact was established, Plaintiff informed the previous policy owner to write a letter to North Carolina Mutual Life Insurance Company (NCMLIC), explaining what changes to the policy he was requesting and all pertinent information related to the fraudulent loan taken out on his policy and to attach a certificate of service to that letter *(See E-3),* then forward those documents to Plaintiff, so that he could mail those documents to NCMLIC, customer service department, along with a

**3**

letter written by Plaintiff requesting information and the proper procedures to follow to gain the necessary authorization to make policy decisions and Plaintiff, also provided all the supporting documentation to help facilitate the matter. On June 15, 2018, Plaintiff, sent to NCMLIC, all the above-mentioned information and notified NCMLIC, that the previous policy owner was incarcerated and unable to effectively communicate with them in a personal manner, Plaintiff then provided the previous policy owner's contact information to NCMLIC, so that they could forward to him the proper documents to transfer the policy over to Plaintiff and receive the requested information. The previous policy owner (Willie A Sullen) received a letter from NCMLIC, dated July 2, 2018, at the contact address that Plaintiff provided, and that letter informed the previous policy owner of the necessary actions that was required of him to make the changes to his policy and to get access to the requested documentation, which was to send NCMLIC, a signed and dated notarized letter *(See E-2)*. Plaintiff mailed certified letters to NCMLIC, CEO Michael L Lawrence and their customer service department, over a period of time throughout the dates of July 20, 2018, and June 11, 2020, *(See E-4,5,6,7)*, also accompanying one of those certified letters was an information request letter from Plaintiff and a notarized document from the previous owner of the policy, dated July 11, 2018, requesting a history of all transactions and the necessary forms to make changes to his policy *(See E-8)*, in which, North Carolina Mutual refused to comply to his demand. And if this Court would examine both letters from the previous policy owner *(See E-3,8)*, it probably would come to a conclusion, that NCMLIC, was given ample opportunity to make the requested changes to the policy and provide the Plaintiff and the previous policy owner with

4

all the loan related information and report the criminal matter to the proper authority before litigation started, but they failed to perform their duties before and after the fact as required by Alabama law *(See E-9).* Plaintiff received a letter from NCMLIC, dated August 7, 2018, claiming that their company was prohibited from sharing information about the previous owner's insurance policy or make changes without the appropriate legal documents authorizing a non-owner to act on behalf of the owner *(See E-10).* But NCMLIC, ignored the fact that Plaintiff provided legal documentation from the previous policy owner on two separate occasions giving Plaintiff authority over the policy, and they also refused the previous policy owner's request for information concerning the illegal fraudulent loan obtained by an unidentified person, with their possible assistance or make the requested changes to the policy. Due to NCMLIC continuous effort to deny Plaintiff and the previous policy owner access to basic information about the insurance policy, Plaintiff was forced to take several different civil routes to seek redress for the policy violation issues perpetrated by NCMLIC. In the letter to Plaintiff from NCMLIC, dated August 7, 2018, they stated that Plaintiff needed durable power of attorney or letters of conservatorship from a court, yet they say a loan was given to an unknown and unidentified individual without any of the above-mentioned documents or a notarized letter or consent from the previous policy owner. The refusal of NCMLIC, to provide the necessary information to Plaintiff and the previous policy owner (Willie A Sullen), which would have allowed them to determine the real value of the policy because at that point, there was an outstanding debt that was due on the policy, which was produced by the fraudulent loan illegally obtained, that is, if it did exist and the documents

5

could be produced to prove its validity. By the actions of NCMLIC, to deny Plaintiff and the previous policy owner requested documentation they were committing the crimes of conspiracy, fraud, and extortion because Plaintiff pay the premium on the policy and without the proper documents, there was no way to know if Plaintiff was making a bad investment, so here, NCMLIC, actions amount to breach of contract. Plaintiff became the new owner of the policy in question, on December 12, 2019, *(See E-11),* and he discovered that the fictitious loan was supposedly granted on July 22, 2002, in the amount of $262.33, in which NCMLIC, claims the loan predated their acquisition of the company responsible for the loan and that NCMLIC, did not have the original loan documents in their possession, but they continued to extort money from Plaintiff's family for years, without providing any proof that the loan ever existed *(See E-12).* And in fact, in the Defendants answer brief from the Florida Appeals Court, on page 8, they stated that NCMLIC, did not have original loan documentation in their records and could not provide a copy to Plaintiff, then on page 14, NCMLIC, asserted that they were unable to produce at trial the policy loan documents, as it had never received them from the acquired business and therefore was not entitled to enforce the policy loan *(See E-13,14).* Yet, none of the Lower Courts forced NCMLIC, to produce the loan documents by way of discovery or an evidentiary hearing and thereby assisted them in criminal activities by dismissing the fraud, conspiracy and negligence causes of action while at the same time NCMLIC, claimed that they were not entitled to enforce the policy loan, but for years NCMLIC, had been extorting money from Plaintiff's family by way of using the false loan to force them to pay the loan balance or lose the policy, by reduction of the death

6

benefits. And by NCMLIC, failure to comply to the laws or the demands of the previous policy owners, it forced Plaintiff to write and send certified letters to the following entities: Alabama Department of Insurance, National Insurance Crime Bureau, Alabama Commissioner of Insurance, and Alabama and Florida Attorney Generals, *(See E-15,16,17,18,19,20,21).* Plaintiff received an e-mail response from Alabama Department of Insurance (ALDOI), Fraud Division, dated August 15, 2018, stating that they were referring the fraud claim to their consumer services division, even after Plaintiff provided clear proof that a crime had been committed against his insurance policy *(See E-22).* Once Plaintiff and the previous owner of the policy informed NCMLIC, that there was a possible act of fraud against the insurance policy, their duty, based upon the Code of Alabama mandatory reporting requirements, was to notify Alabama and North Carolina Department of Insurance or the Commissioner of Insurance, which they never did, because they were part of the conspiracy to illegally confiscate funds from the policy in question *(See E-9).* In the above-mentioned e-mail dated August 15, 2018, the investigator claimed that the process begins with the ALDOI, Consumer Services Division, even though Plaintiff provided documentation proving a crime had been committed and that NCMLIC, failed to report fraud allegations to their agency, therefore violating legal protocols. Plaintiff then received an e-mail from the ALDOI, Consumer Services Division, dated August 24, 2018, containing the exact words of the letter that was sent to Plaintiff by NCMLIC, but the e-mail failed to address any of the crimes or allegations reported to that agency *(See E-23,29).* First, ALDOI, Consumer Services Division, failed to address the fact that, NCMLIC, did not report Plaintiff and the previous policy owner fraud claims,

7

although we provided all the documentation to them proving that this crime occurred, but still ALDOI, refused to even conduct a real investigation into that problem area. Then after Plaintiff provided ALDOI, with letters and notarized documents from the previous policy owner, clearly giving Plaintiff authority over his policy and then forwarded to ALDOI, a letter from NCMLIC, that was sent to the previous policy owner which outlined the required documents that were necessary to authorize Plaintiff to access the requested information, still ALDOI, rejected those documents and refused to perform it is sworn duties to investigate criminal activities. ALDOI, e-mail shows complete corruption within the system because the consumer specialist did not even bother to do a minimum investigation, he just copied words from the same letter sent to Plaintiff verbatim but totally ignored all the evidence Plaintiff provided *(See E-23,29)*. The key issues here are NCMLIC, conspired to cover up fraud violations, that they were illegally a part of, due to them providing a said loan to unknown persons, without the proper authorization or documentation and then refused to allow the previous policy owner to make legal decisions regarding his own policy. And once Plaintiff and the previous owner of the policy brought the fraud incident to NCMLIC, attention they became hostile toward the people who had a legitimate right to the policy information and funds but were rejected from accessing the requested documentation. And by NCMLIC, refusal to report the crime of fraud and provide the requested information to Plaintiff and the previous policy owner, it only proves that they have been involved in some illegal activities pertaining to all insurance policies in their possession. And Alabama Department of Insurance (ADOI), willfully and knowingly assisted NCMLIC, in a conspiracy to cover up the

**8**

crime of fraud by refusing and ignoring factual information that was presented to them and then refused to promptly and properly act upon the documents that Plaintiff provided to multiple officials within that agency. Due to NCMLIC, failure to resolve the loan issue, Plaintiff was forced to file a lawsuit in the Federal Court System in October of 2018, and the only asserted issue that the Court could find with Plaintiff's complaint was that they claimed that he did not have standing, due to NCMLIC, refusal to make the ordered changes to the policy in question, but in December of 2019, Plaintiff gained complete authorization over the insurance policy *(See E-11,12),* and in January of 2020, the Federal District Court illegally dismissed Plaintiff's civil action without allowing the Defendants the opportunity to respond and after the fact that Plaintiff had obtained legal standing in the case. Plaintiff immediately appealed the Lower Federal Court decision, only to encounter the same opposition in the United States Appeals Court, which was to deny and dismiss every motion filed in that Court by Plaintiff and the Appeals Court follow suit by dismissing Plaintiff's complaint for failure to pay the filing fees after denying his forma pauperis motion. In December of 2019, NCMLIC, mailed Plaintiff a package with general policy information attached but failed to include any documentation related to the presumed loan that was borrowed by an unknown person and without providing Plaintiff with any legal documents that authorized such an action, and as of this date, Plaintiff has yet to receive any proof that the fictitious loan in question actually existed. Plaintiff is quite convinced that both NCMLIC and Booker T Washington insurance company placed tremendous pressure on Plaintiff's family to repay the false loan and its accruing interest and due to the previous policy owner being incarcerated, Plaintiff's family

**9**

was concerned about his wellbeing, so they paid the loan and its accruing interest without questioning the legitimacy of the loan situation, due to the fact that they were unable to afford a lawyer and just wanted to cover funeral expenses in case something happen to the insured and NCMLIC, knew that fact and took advantage of Plaintiff's family and forced them to pay the loan and its interest or cause the reduction of the death benefits or lose the policy completely. On July 1, 2020, Plaintiff received a letter from NCMLIC, informing him that the company was placed in rehabilitation on December 3, 2018, by order of Wake County Superior Court , North Carolina, with the consent of the Board of Directors of NCMLIC *(See E-24).* And according to that document, the order was confidential and sealed by the court and was unsealed on February 1, 2019, which means they have placed a freeze on all assets, including insurance policies and they sent Plaintiff a request for hardship form to be completed as soon as possible, so that NCMLIC, could determine whether Plaintiff qualify for such relief. The problem with that concept is that Plaintiff and the previous policy owner attempted to force NCMLIC, to make changes to the policy, provide the true value of the policy, provide loan and interest information and to allow the possibility of cancellation of such, so it was not an option for NCMLIC, to conclude whether Plaintiff was eligible for hardship because they forfeit their rights to make any legal decision concerning the policy in question, due to the fact that NCMLIC, failed to provide the previous policy owners with the proper information in a timely manner and refused to make the necessary requested changes that would have allowed Plaintiff the ability to take the proper action. Plaintiff started to communicate with NCMLIC, in February of 2018, concerning the loan, first by way of telephone then by certified letters and

**10**

Finally, the filing of his federal lawsuit in October of 2018, and soon following that action, the rehabilitation orders was issued on December 3, 2018, so the Defendants had almost a year to rectify Plaintiff's loan problem before their company went into bankruptcy status and now, they are trying to punish Plaintiff for errors and crimes they committed throughout this process by refusing to compensate him for damages and cost inflicted upon Plaintiff without legal or logical reasons. After experiencing great difficulty in the Federal Courts, Plaintiff decided to file an action in the Florida Small Claims Court (FSCC) to achieve several objectives and on July 29, 2020, he filed a civil complaint and attached to that action, a seven-page statement of claim with fifty-three pages of exhibits, which supported and confirmed all Plaintiff's allegations and causes of action. NCMLIC, never filed a single document with the clerk of FSCC, to defend themselves, in the above-mentioned action, for almost one year, yet the FSCC refused to enter default judgment against NCMLIC, in turn, aided and abetted them in a conspiracy to cover up fraudulent behavior. Plaintiff received an e-mail from North Carolina Department of Insurance (NCDOI), fraud division, dated November 5, 2020, and in that letter, the General Counsel for that agency was attempting to negotiate some type of deal that would have alleviated the criminal liability of NCMLIC, *(See E-25),* and because NCDOI, is supposed to be an investigative body that search out the matter of insurance fraud, but in that instance, NCDOI, was defending criminals from the repercussion of their illegal actions. In that e-mail NCDOI, acknowledge the fact that Plaintiff had held conversations with officials from NCMLIC, prior to his e-mail, concerning the possible resolution to the problem, but failed because NCMLIC, refused to

**11**

compensate Plaintiff for all the damages and cost stemming from their misconduct. The phone conferences held between Plaintiff and NCMLIC, top officials and the desire of the General Counsel for NCDOI, to meet with Plaintiff, is proof positive that serious crimes had been committed not just against Plaintiff's policy but against thousands of other policy holders from NCMLIC, who was forced to pay fake loans off, that did not exist. The death benefits payment on Plaintiff's insurance policy is minimum and did not warrant the involvement of the key officials in both NCMLIC, and NCDOI, unless there were some critical legal issues pending, that was more costly than money because NCMLIC, is spending tens of thousands of dollars in legal fees for representation, in which they could have easily given that money to Plaintiff, but they know that's only part of the solution, the other part is criminal liability, so suppression and cover ups are to be utilized to cease any information or documentation that exposes the reality that NCMLIC, have been extorting and embezzling money from possibly thousands of policy holders as in the same manner of Plaintiff's situation. Then on December 8, 2020, Plaintiff received and confirmed mediation with the Defendants, which lasted for about four hours *(See E-26)*, and ended with NCMLIC, offering to place the insurance policy back into its original state, which only benefitted the Defendants because it relieved them of criminal liability, by returning all stolen loan payments and the accruing interest to Plaintiff, but refusing to compensate for all the damages caused by their negligent and fraudulent actions. Then on February 9, 2021, NCMLIC, legal counsel e-mailed Plaintiff a group of falsified and fabricated exhibits with a letter of explanation attached, claiming that those documents would be used at the scheduled February 11, 2021, first final hearing

**12**

*(See E-27),* then, Florida Small Claims Court (FSCC), conducted Plaintiff's, first final hearing, which was set for February 11, 2021, and in that hearing, Plaintiff was denied due process and access to the court, by the Trial Judge action of putting him on mute for the duration of the hearing, which disallowed Plaintiff the ability to have any input into the Trial Judge's decision to reschedule the hearing for March 31, 2021, which gave the Defendants an illegal and unrequested extension of time and due to the fact that NCMLIC, had just hired their legal representation, therefore, FSCC assisted them with the necessary time for them to prepare some type of legal defense, which is aiding and abetting the Defendants in criminal activities. Now NCMLIC, legal counsel refused to file or present the above-mentioned false documents with the clerk of the FSCC during the February 11, 2021, first final hearing, because they knew the penalty for committing fraud against the court, so on February 16, 2021, Plaintiff filed a seven-page additional statement of claim along with fifty pages of exhibits, which had been sent to him by NCMLIC, legal counsel on February 9, 2021. And on February 22, 2021, the second final hearing was scheduled for March 31, 2021, wherein, the Trial Judge abused their discretion by introducing known false evidence into court records, which had been e-mailed to the court, by the Defendants, who failed to filed any documents, pleadings or responses to the complaint with the FSCC, for about one year or without going through the proper procedures or channels to present the documentation and in the second final hearing on March 31, 2021, the Trial Judge admitted in the court records (transcript), that sending the false documents to the Trial Judge e-mail was not the proper channel to receive evidence, but still the court submitted those false exhibits into the court records. Among the exhibits

**13**

emailed to Plaintiff on February 9, 2021, by NCMLIC, legal counsel were the following documents: **(1)** An application for the insurance policy in question, printed on the original Booker T. Washington (BTW) letterhead form *(See E-28),* which is over thirty years old and is the only true and correct document filed in the Trial Court by both parties and yet NCMLIC, failed to produce a single exhibit on BTW, letterhead forms, to show and prove the fictitious loan existed, which was supposed to be only twenty years old and the Trial Court failed to order NCMLIC, to provide such information since the loan was the core issue of Plaintiff's complaint. Another exhibit emailed to Plaintiff on February 9, 2021, and was e-mailed to the Trial Judge on March 31, 2021, **(2)** Was a false and fabricated document that NCMLIC, sent to Alabama Department of Insurance on August 24, 2018, trying to justify their criminal behavior *(See E-29),* and in that letter NCMLIC, was making all kind of false assertions, such as, the policy and loan in question was issued by BTW, and that NCMLIC, only assumed that company on April 29, 2010, and only relied on electronic data to prove the loan existed but failed to produce any evidence to support that theory and the Trial Court refused to order an evidentiary hearing to get access to that information. NCMLIC, further asserted that they were unable to make changes to the policy or release information to Plaintiff without consent from the previous policy owner, when in reality Plaintiff provided NCMLIC, with letters from the previous policy owner *(See E-3,8),* that clearly requested forms to make changes to the policy, the history of the policy, and loan information, but NCMLIC, refused to comply due to the fact that they knew the previous policy owner was incarcerated and did not want to turn the policy over to Plaintiff because they assumed legal action would

14

eventually follow. NCMLIC, continued providing false information to Alabama Department of Insurance, by stating that it was not evidence that a policy loan was fraudulently taken out by a party other than the previous policy owner and that the previous policy owner's letters were not signed and that NCMLIC, does not have any documentation from BTW, indicating that any fraud occurred on the policy *(See E-3,8,29)*. First, Plaintiff provided NCMLIC, and the Trial Court with evidence that fraud had been committed against the policy, which were certified and notarized letters from the previous policy owner, asserting that he never gave permission to anyone to access his policy and that the loan was fraudulent and that he wanted all information related to the policy and the loan *(See E-3,8)*. The above-mentioned NCMLIC, false and fabricated letter sent to Alabama Department of Insurance (ALDOI) in August of 2018, was claiming that the previous policy owner's letters was not signed, but that is an untrue statement and both letters prove so, *(See E-3,8)* therefore, NCMLIC, was insinuating the allegations of fraud could not be officially investigated, due to the unsigned documents and yet this same falsified exhibit was e-mailed to the Trial Judge on March 31, 2021, to be used as evidence, which meant NCMLIC, lied to a government investigative body (ALDOI) and then committed perjury in the Trial Court and knowingly and willingly submitted false documents to both the afore-mentioned government authorities and allowed this information to be continuously circulated without performing its due diligence of investigating Plaintiff's fraud allegations. In the March 31, 2021, second final hearing, the Trial Court erroneously dismissed the causes of action for fraud, conspiracy, and negligence without applying the standard required by the Florida Rules of Civil

**15**

Procedure, when fraud was alleged, and purposefully ignored all the supporting evidence provided by Plaintiff, which proved such crimes were committed. And even in the Trial Court final judgment, in which Plaintiff was the prevailing party, the admission of guilt of the three above-mentioned causes of action was pronounced when the court stated that the Defendants did not produce at trial the original documents to prove the policy loan, that was at issue *(See E-30),* and to clarify the FSCC, instructions to the Defendants, is the fact they did not produce any documents to confirm the existence of the loan, yet at the same time the FSCC, refused to order discovery or an evidentiary hearing. Plaintiff filed in the FSCC, a statement of claim along with fifty-three pages of exhibits on July 29, 2020, and on February 16, 2021, Plaintiff filed an additional statement of claim with fifty pages of exhibits and NCMLIC, never filed any pleadings, motions, responses, exhibits or presented a defense throughout duration of the civil proceedings, yet the FSCC, found favor for the Defendants by dismissing the causes of action for conspiracy, fraud and negligence, after taking false testimony at trial, so what evidence did the Court rely upon? Since all documents was provided by Plaintiff and supported his causes of action and allegations and the Defendants never presented to the Court any documents or defense to prove their innocence. The FSCC, Trial Judge stated in the final judgment that the Court finds for Plaintiff, inasmuch as the Defendants did not produce at trial the original documents to prove the policy loan that is at issue, but here the FSCC, failed to clarify and identify the breach of contract because the loan was not part of the contract between any of the parties involved in the agreement and since NCMLIC, claims that Booker T. Washington Insurance Company initiated the loan and that

**16**

they were not responsible for it and the Plaintiff, and the previous policy owner alleged they never gave authorization for the issuance of the loan, then this shows the fictitious loan cannot be a breach of contract but rather a breach of the federal and state criminal laws and it was the responsibility of the FSCC, to do a thorough investigation into the loan to prove a breach of contract existed. The meaning of breach is as follows: an act of breaking or failing to observe a law, agreement, or code of conduct; this explanation clearly proves that the FSCC, abused its discretion by dismissing the causes of action for fraud, conspiracy and negligence, because the court refused to hold an evidentiary hearing or discovery to determine if the loan did or didn't exist, which was the only process available to the court to utilize to establish a breach of contract but the refusal of the Defendants to provide evidence of the loan to the FSCC, is surely a violation of the law because if the loan does not exist the Defendants have committed fraud, conspiracy and negligence.

## COUNT 1 - CONSPIRACY

1) Defendants, North Carolina Mutual Life Insurance Company (NCMLIC)and its officials work together with its acquired business (Booker T. Washington Insurance), and others for an extended period of time to illegally confiscate funds from Plaintiff's family and from policy number 0184560N, and fabricated documents and stories about the existence of an unproven loan without consorting or having the permission of the previous policy owner (Willie A Sullen), and without providing the necessary documentation or authorization to perform such an action.

**17**

2) Defendants, NCMLIC, Alabama and North Carolina Department of Insurance (ALDOI & NCDOI), conspired to deny Plaintiff and the previous policy owner of the insurance policy in question, their rights to access information that was vitally important to determine the status of the policy, the real value of the policy, the ability to make the necessary changes to the policy or the cancellation of the policy in a timely manner, by their actions of refusing to investigate the matter, acting as an agent to perpetuate criminal activities, falsifying and purposely fabricated documents to cover up their misdeeds and failure to report fraud allegations to the proper authority.

3) Defendants, NCMLIC, ALDOI, and NCDOI, conspired to cover up a clear case of fraud that was initially committed by NCMLIC, and it was supported by documentation provided to them by Plaintiff, yet the Defendants failed to take the required action, which would have help to protect the security and privacy of the policy and compelled an investigation into the allegations after receiving sufficient evidence

4) NCMLIC, NCDOI, and ALDOI, violated federal law (i.e.) 18 USC, section 241, which states that if two or more persons conspire to injure, oppress, threaten and intimidate any person in any state or territory by denying him/her rights and privileges secured by the constitution or federal laws they would be penalized, yet the Defendants falsified documents and conspired to ignore Plaintiff's claim of fraud and negligence and the previous policy owner rights to access his own policy and make decisions concerning the financial stability of said policy. and in turn, denying them due process.

**18**

## **COUNT 2 – NEGLIGENCE OF DUTY**

1) Defendants, NCMLIC, NCDOI, and ALDOI, deprived both Plaintiff and the previous policy owner of their rights of resolution concerning the distribution of information and the alterations of policy number 0184560N, thereby causing irreversible damages to the policy and persons of both Plaintiff and the previous policy owner, which is a failure to perform their sworn duties of protecting the privacy and property of their customers, and then conspired together to deny the Plaintiff and the previous policy owner access to general information relating to the fictitious loan.

2) Plaintiff followed the proper chain of command by first contacting NCMLIC, Customer Services Department, NCMLIC, CEO, ALDOI, Fraud Bureau, ALDOI, Consumer Services, ALDOI, Commissioner and NCDOI, concerning the illegal action of obtaining a fraudulent loan without authorization and he also provided contact information of the Previous owner of the policy to assist the above-mentioned entities in rectifying the situation, but they refused to comply with any demands from legitimate and legal sources.

3) After Plaintiff notified NCMLIC, of the potential crime of fraud they quickly decided not to collaborate with him on the matter, but instead focused on the previous policy owner for divisive purposes, knowing that the previous policy owner was incarcerated and unable to communicate in an effective way, so NCMLIC, tried to use this situation to their advantage to literately hinder any litigation against them on this issue, thereby failing to protect the interest of the

**19**

policy in question.

4) Defendants NCMLIC, ALDOI, and NCDOI, was given convincing documentation from Plaintiff and the previous policy owner that a crime had been committed and that the immediate transfer of ownership of the policy in question to Plaintiff, was vitally necessary to preserve the integrity of the policy but NCMLIC, failed to perform its duty, refused to release the requested information, make the demanded changes, report the fraud claim or investigate the alleged crimes.

5) Defendants, NCMLIC, ALDOI, were sent certified mail by Plaintiff on multiple occasions, attempting to address the issues of fraud, conspiracy, and negligence, accompanied by supporting evidence, but the Defendants failed or refused to respond and totally ignored the complaint and decided to negate their sworn duties of complying with the laws and protect the security and interest of all policy holders.

## COUNT 3- FRAUD

1) Plaintiff discovered an illegal loan that was borrowed on the policy in question and immediately began contacting NCMLIC, starting in February of 2018, who then failed to report the incident to the proper authorities or take the appropriate actions to rectify the problem but instead fabricated misleading documents to hinder Plaintiff and the previous policy owner from gaining access to the pertinent information that would have resolved the matter but due to NCMLIC, criminal involvement they conspired with others to conceal crucial information to hide their misconduct.

**20**

2) Plaintiff provided contact information of the previous policy owner to NCMLIC, so that the fraud claims could be quickly resolved and in turn, NCMLIC, sent a letter to the previous owner of the policy, detailing what actions he needed to take to accomplish that objective and once he responded by sending Plaintiff certified and notarized documents to forward to NCMLIC, giving Plaintiff authorization to requested information and to make changes to the policy, they simply received that information and refused to comply or properly respond and ignored the orders of the previous policy owner and failed in their duty to protect and secure the policy holders investment and severed all lines of communication with the previous policy owner.

3) Plaintiff contacted NCMLIC, ALDOI, Fraud Bureau, Alabama and Florida Attorney Generals, ALDOI, Commissioner and held negotiations with NCDOI, to report his allegations of fraud and to provide supporting documentation but all these agencies and officials refused to investigate this violation even though there are fraud mandatory reporting laws that requires and compels these agencies to perform such duties and clearly directed them to take immediate action.

4) Defendants NCMLIC, purposefully extorted money from Plaintiff's family members for years and embezzle funds from the policy in question, then sent illegal collection notices to them, using fabricated and fraudulent information such as an alleged loan that NCMLIC, claimed that they neither have a record of nor knows who originally borrowed or granted the access privileges to receive those benefits. Also, NCMLIC, failed to show and prove that the loan is real, but rather, they insinuated that an acquired business (BTW) was responsible for the

**21**

transaction that predated NCMLIC, acquisition of that company, yet they proceeded to illegally confiscate and extort money without proper authorization or justification.

5) Once Plaintiff exhausted all of his remedies on the local and state level, and turned to the federal courts to address the issues of his complaint, due to the fact that ALDOI, NCDOI, and NCMLIC, bonded together with all of their sources and forces to deny Plaintiff the basic rights to determine the real value of the insurance policy in question and fabricated false documents to hide the fact of whether the loan ever existed and this criminal behavior disallow Plaintiff the option to make the proper choice of whether to keep the policy or not.

## COUNT 4 – BREACH OF CONTRACT

1) Defendants, ALDOI, NCDOI, and NCMLIC violated state and federal laws by depriving both Plaintiff and the Previous policy owner of their rights to make decisions about the distribution of information and the alterations for policy number 0184560N and the failure to protect the privacy and property of said individuals based upon their status in life.

2) Defendants, NCMLIC, NCDOI, and ALDOI, purposefully refused to comply with the direct orders of Plaintiff and the previous policy owner to investigate a fraud claim or make the requested changes to the insurance policy or provide documents actively sought to resolve serious problems that NCMLIC, misconduct produced.

22

3) Defendants, ALDOI, and NCMLIC, was sent certified mail by Plaintiff addressing the issues of conspiracy and fraud with all the supporting documentation, but the Defendants failed to respond or totally ignored the claims by deciding that Plaintiff and the pervious policy owner was at a disadvantage because they were poor and uneducated with no real recourse of action nor resources to accomplish the required objective.

4) Starting in February of 2018, Plaintiff reported to NCMLIC, by way of phone calls and certified mail that someone had illegally borrowed money on policy number 0184560N, which should have immediately triggered an investigation but instead of proceeding with that action NCMLIC, covered up the crime and hindered the legally authorized persons from accessing the policy, thereby creating a contract dispute and security and privacy issues.

5) Plaintiff filed civil actions in the federal, county and state courts against NCMLIC, for their part in a conspiracy to defraud the previous policy owner and Plaintiff of their property and rights and due to the unjust decisions of those courts, they allowed NCMLIC, to continue to breach the insurance policy contract, by NCMLIC, refusing to pay the interest on all money stolen from Plaintiff's family members and embezzled from the policy and declining to pay the annual interest and dividends on the policy that were illegally confiscated by NCMLIC, using the false loan and its accruing interest to justify not paying these annual fees and their failure to provide any documents to support the existence of such a loan and NCMLIC, refusal to place the cash value of the policy into its proper or true financial status.

**23**

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment as follows:

1) That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by the Defendants' conduct,

2) That the Court grant punitive damages for Defendants' malicious and recklessly indifferent conduct,

3) That the Court grant Plaintiff all lost business revenue and employment wages because, Plaintiff had to litigate these cases for years and would have been entitled to enjoy those benefits if not conspired and retaliated against by the Defendants,

4) That the Court grant Plaintiff expenses of litigation, including reasonable attorney fees, pursuant to the Titled VII and 42 U.S.C. 21 section 1988,

5) That the Court grant Plaintiff a jury trial,

6) That the Court grant Plaintiff all other relief the Court deems just and proper,

7) That the Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further fraudulent insurance schemes.

Respectfully submitted this 27th day of July 2022.

*Nail v. Denn*

Noel Vincent Thomas

**24**

14004 Nephi Place, Apt # 103

Tampa, Florida 33613

Tel: (813) 817-7667

Nlthms44@gmail.com

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all issues so triable.

**25**